UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARGARET MARNOCHA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 3:16-CV-592-PPS-JEM |
| ) | |
| CITY OF ELKHART, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Margaret Marnocha was fired from her position of Deputy City Attorney for the City of Elkhart after a new mayor was elected. Marnocha alleges she was sacked for exercising her First Amendment rights and because of her gender and age. Defendants counter that this house-cleaning was entirely appropriate since Marnocha held a policymaking position, and the next mayor was entitled to have his own team in place. They therefore seek summary judgment. Because I find that Marnocha, as the Deputy City Attorney, held a policymaking position, the motion for summary judgment [DE 94] will be GRANTED.

### Background

As usual, I'll start with the facts recounted in the light most favorable to Marnocha. Although Marnocha was originally employed by the City of Elkhart as the Utility Attorney on September 27, 2010, at the time of her termination in November 2015, her position was Deputy City Attorney. During her tenure as Utility Attorney,

several other attorneys resigned and were not immediately replaced. Marnocha was assigned additional duties, and she received a raise. [DE 60-5 at 58-59.]

In May 2015, Marnocha transferred from the Utility Attorney position to the Deputy City Attorney position in the law department. [*Id.* at 48; 60-7 at 12.] At that time, there were only two lawyers for the City of Elkhart – Vlado Vranjes, Corporation Counsel, and Marnocha, Deputy City Attorney. [DE 60-5 at 51; 60-14, ¶10; DE 4, ¶46.]

The job description of the Deputy City Attorney, which was updated in May 2015 upon Marnocha's transfer into the law department, summarized the position as follows:

> The Deputy City Attorney is responsible for assisting the Corporation Counsel in providing legal counsel and representation to public officials, employees, boards and commissions of the City relating to municipal governance. He/she is also the labor and employment attorney and is the litigation attorney for the City handling all litigation before any courts, administrative bodies, and arbitrators.

[DE 60-5 at 48; 60-6 at 1; 60-14, ¶9.] The Deputy City Attorney's principal duties and responsibilities, as listed in the job description, are:

- Provide legal counsel and representation to all municipal officials, employees, boards and commissions of the City relating to municipal governance.

- Provide employment law advice and representation of management in all administrative and legal proceedings related to the employment context.

- Provide legal advice to the Human Relations Department in all matters related to Housing and Employment discrimination.

- Provide legal advice to the Human Resources Department in all matters related to employment discrimination and other areas of employment law.

- Represent the City's interest in legal proceedings not covered by the City's insurance program, and prosecute or supervise the prosecution of ordinance violations cases.

- Attend meetings of and provide legal counsel to any board or commission assigned by the Corporation Counsel.

- Perform legal research on any legal matter presented to the Office of the Corporation Counsel.

- Provide assistance to the Corporation Counsel in regard to any legal matter relating to municipal governance.

[*Id.*]

As indicated from this list, and in practice, Marnocha gave advice to department heads and human resources, conducted legal research, assisted the Corporation Counsel, attended some counsel meetings, attended every Board of Works meeting, and represented the City's interests in legal proceedings. [DE 60-5 at 38-42, 50-51.] According to Marnocha, "people would come to me because they'd want to know if something was legal." [*Id.* at 39.]

Marnocha is a Democrat. [DE 4, ¶23.] She worked for Mayor Richard Lee Moore (also a Democrat), who was the mayor for 8 years and whose term finished at the end of 2015. [DE 60-11 at 8; DE 4, ¶¶23-24.] Mayor Moore worked with Marnocha on committees, and sometimes he sought legal advice from Marnocha. [DE 60-11 at 10-11.] According to Mayor Moore, he never formally appointed Marnocha, but it is clear that she became the Deputy City Attorney during his administration. [*Id.* at 29-30.]

3

Mr. Neese is a Republican who became mayor in 2016.  Neese first heard of Marnocha's name in the media in 2014, during a forced annexation.  [DE 60-8 at 21, 27-28.]  Moore was the Mayor at that time, and Marnocha did legal work and coordination with outside attorneys on the annexation project, and publically represented the Moore administration's position on annexation.  [DE 60-10 at 25-28.]  Annexation was a controversial topic during the 2015 election, and Neese opposed annexation.  [DE 60-3, ¶26; DE 60-8 at 80.]

Marnocha attended various fundraising events for Mayor Moore.  [DE 4, ¶24.]  Sometime before the 2015 election, Vranjes (the City's Corporation Counsel), told Marnocha they were going to re-establish the City Attorney position, and that she should be the City Attorney in 2016.  [DE 60-14, ¶¶11-12; 60-5 at 52, 60-61.]  However, things did not turn out that way.

After Mayor Neese won the election in November 2015, he began the usual house cleaning of high-ranking City officials telling many of them that they would not be retained in their positions.  [DE 60-13 at 2-3.]  Mayor Neese was opposed to annexation and felt that Marnocha was a strong visible proponent of the issue.  [DE 60-3, ¶26; 60-8 at 80, 87-88, 97-99.]  According to Mayor Neese, he did not want his administration associated with annexation, and he believed that retaining Marnocha would be a detriment to his administration.  [DE 60-3, ¶26.]  Mayor Neese decided to terminate Marnocha's employment on his own, and he did not discuss it with anyone beforehand. [DE 60-8 at 109.]  Neese assumed that Marnocha was a Democrat.  [*Id.* at

4

57-58.] According to Neese, on November 5, 2015, he received a list of the City's appointed positions from the human resources department, and Marnocha's name and the Deputy City Attorney position was included on that list. [*Id.* at 63-64; 72, 74-77; 95-1.]

A few days after the election, Mayor-Elect Neese went to Marnocha's office to talk with her. [DE 60-5 at 62.] According to Marnocha, he said, "I just want you to know I've been where you are." [*Id.* at 63.] Then, Neese told her, "I want you to know you're fired." [*Id.*] Marnocha had a ready response. She told him she was immune from termination because she was "not appointed." [*Id.*] When she asked Neese why she was being fired, Neese responded, "because I want to hire my own guy." [*Id.*] Marnocha said, "Stop, stop right there. You need to consult an attorney." [*Id.*] Marnocha then gave Neese a memorandum she had prepared about what positions were subject to mayoral appointment. [*Id.* at 63-64; 60-9 at 37-38.] Neese told her he had already spoken with an attorney; his decision was made. [DE 60-5 at 63-64.] Neese proceeded to walk out of Marnocha's office, and there was no further discussion about the termination of her employment. [*Id.* at 63-64.] The termination of Marnocha's employment was effective December 31, 2015. [*Id.* at 62; 60-8 at 66.] Neese was sworn into office on January 1, 2016. [DE 60-2 ¶9.]

Mayor Neese did keep some people from the previous administration. For example, he reappointed City Engineer Machlan (a Republican) in 2016 because, according to Neese, he was familiar with Machlan and knew him to be prepared and

5

knowledgeable in his work for the City, and he thought he would be an asset. [DE 60-8 at 101-102; 60-10 at 32-33, 42; 60-13 ¶¶9-12.] Neese also reappointed Corporation Counsel Vranjes (a Republican) in 2016, because of his longevity and a favorable recommendation. [DE 60-8 at 159-60; 60-9 at 63.]

Following Marnocha's termination, the City hired two male attorneys to perform the combined tasks formerly assigned to Marnocha. [DE 60-12 at 30.] The City hired Lawrence Meteiver as City Attorney on January 1, 2016, and Randall Arndt as Deputy City Attorney on March 14, 2016. [DE 60-15 at 30.]

## Discussion

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although employment discrimination cases often turn on factual questions, they can nonetheless be amenable to summary judgment when there is no genuine dispute of material fact or there is insufficient evidence to demonstrate the presence of the alleged motive to discriminate. *Cliff v. Board of Sch. Comm'rs of City of Indianapolis, Ind.*, 42 F.3d 403, 409 (7th Cir. 1994).

Generally speaking, "public employees may not be made to suffer adverse job actions because of their political beliefs." *Carlson v. Gorecki*, 374 F.3d 461, 464 (7th Cir. 2004) (citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 79 (1990); *Elrod v. Burns*, 427

6

U.S. 347 (1976)). It is therefore "well established that hiring, firing, or transferring government employees based on political motivation violates the First Amendment[.]" *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). But there are certain exceptions for employees in policymaking or confidential positions. *Id.* Thus, the First Amendment "forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless political affiliation is an appropriate requirement for the position involved." *Rutan*, 497 U.S. at 64.

Although Defendants claim it is Marnocha's burden to prove she was within the scope of the protection of the First Amendment, this is incorrect. "The defendant bears the burden of showing that the exception to the general rule against patronage dismissals applies to the position in question." *Kline v. Hughes*, 131 F.3d 708, 710 (7th Cir. 1997).

The principal issue is whether Marnocha was a "policymaker." As described more fully below, this label is just a shorthand way of describing those individuals who are not protected by either federal employment discrimination statutes or the Constitution when a new administration takes office. Before diving into the evidence, let's start with a look at the applicable legal framework. In addition to First Amendment political patronage cases, the Seventh Circuit has widely applied the policymaking exception to the ADEA and Title VII. *See Opp v. Office of State's Attorney of Cook Cnty.*, 630 F.3d 616, 620 (7th Cir. 2010) (ADEA); *Americanos v. Carter*, 74 F.3d 138, 144 (7th Cir. 1996) (First Amendment, ADEA, and Title VII). This is because Title VII,

7

the ADEA, and the Equal Pay Act (another claim brought by Marnocha) all include carve outs for employees who are policymakers. For example, to be an "employee" covered by the scope of the ADEA, that definition reads that the term:

> employee shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

29 U.S.C. § 630(f).

The ADEA therefore excludes from coverage four types of people: (1) elected officials; (2) the personal staff of an elected official; (3) appointees on the policymaking level; and (4) an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. *Opp*, 630 F.3d at 619. Title VII contains the identical definition of "employee" as the ADEA. *See* 42 U.S.C. § 2000e(f). Finally, the EPA, 29 U.S.C. § 206(d)(1), is subject to the definition of "employee" contained in the Fair Labor Standards Act ("FLSA"), which is essentially the same in exempting policymaking or confidential public employees from its scope. *See* 29 U.S.C. § 203.

The Seventh Circuit applies a single test for determining whether someone is a policymaker whether the legal theory is under the First Amendment, the ADEA, or Title VII. Indeed, the Seventh Circuit has specifically declined "to draw a distinction between how aggrieved individuals are interpreted as policymakers under the First Amendment and under the ADEA [and Title VII]." *Opp*, 630 F.3d at 620.

8

All of which brings us to the principal issue in this appeal: what are the key characteristics in determining whether someone occupies a position as a "policymaker?" The analysis begins with the dual Supreme Court cases of *Elrod v. Burns*, 427 U.S. 347 (1976), and *Branti v. Finkel*, 445 U.S. 507 (1980), which originally established the inquiry for these types of patronage dismissal cases.  In *Elrod*, the Court provided that policymaking positions are those "with responsibilities that are not well defined or are of broad scope" and stated that "consideration would also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals."  *Id.* at 368.  In *Branti*, the Court de-emphasized the labels "policymaker" and "confidential" in lieu of a more functional approach, focusing on political loyalty instead.  *Branti*, 445 U.S. at 517-18.  Yet the Seventh Circuit has recognized that, "[d]espite the unusual cases contemplated in *Branti* . . . the terms 'policymaking' and 'confidential' do accurately describe the vast majority of offices that fall within the realm of legitimate patronage under the *Branti* formulation."  *Hagan v. Quinn*, 867 F.3d 816, 824 (7th Cir 2017).

Whether a position qualifies as policymaking is a determination that "may be done without a finder of fact when the duties and responsibilities of a particular position are clearly defined by law and regulations."  *Opp*, 630 F.3d at 620-21 (quotation omitted).  Aside from ordinances, a job description can also be relevant, "to the extent it

9

is consistent with pertinent statutes or ordinances." *Davis v. Ockomon*, 668 F.3d 473, 478 (7th Cir. 2012).

In this case, Defendants do not argue that the official job description is systemically unreliable or manipulated; therefore, I should "focus on the inherent duties of the position as listed in the description." *Powers v. Richards*, 549 F.3d 505, 510 (7th Cir. 2008); *see also Riley v. Blagojevich*, 425 F.3d 357, 361 (7th Cir. 2005) (citation omitted) ("the idea that job performance (rather than job description) should control *Elrod-Branti* analysis has been consistently rejected by this court and others"). In doing this, I should consider factors such as whether the employee's responsibilities "are not well defined or are of broad scope" and whether the employee "acts as an adviser or formulates plans for the implementation of broad goals." *Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir. 1999) (quoting *Elrod*, 427 U.S. at 368).

In considering Marnocha's responsiblities, let's look at the applicable statutes first. The relevant Indiana statute provides for the City of Elkhart that the Corporation Counsel is the head of the department of law, the Corporation Counsel's first deputy is the City Attorney, and the Corporation Counsel's second deputy is the Assistant City Attorney. Ind. Code § 36-4-9-11(a). In this case, because the City Attorney position remained unfilled, Defendants argue that Marnocha was effectively Corporation Counsel Vranjes' first deputy, rather than his second deputy. [DE 60-14, ¶10; DE 95 at 13.] The statutes and Elkhart ordinances do not define the duties of the City Attorney

or Assistant City Attorney; however, the state statute broadly describes the duties of the Corporation Counsel to include managing the city's legal affairs, advising the city and its departments, commencing proceedings to protect or enforce the rights of the city or of the public, and prosecuting ordinance violations. *See* Ind. Code § 36-4-9-12.

In turning to the job description of the Deputy City Attorney, which was specifically tailored for Marnocha when she transferred into that position, Marnocha had the authority to provide legal counsel and representation to all municipal officials, employees, boards, and commissions; the authority to represent the City in court proceedings as the City's litigation attorney; and the authority to provide assistance to the Corporation Counsel on any municipal legal matters. [DE 60-5 at 48; 60-6 at 1; 60-14, ¶9.] This job description seems in line with *Elrod*'s observation that "[a]n employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position." *Elrod*, 427 U.S. at 368. Also, when considering whether an employee "acts as an adviser or formulates plans for the implementation of broad goals," again, the Deputy City Attorney job description seems to fit into the category of a policymaker. *Id.*

The controlling Seventh Circuit cases in this area strongly support a finding that Marnocha was a policymaker. *Newcomb v. Brennan*, 558 F.2d 825 (7th Cir. 1977), is directly on point. There, the Seventh Circuit found that the deputy city attorney of Milwaukee "functions in a highly discretionary role" and was a policymaker. *Id.* at 830.

11

The Court focused on the broad scope of duties which included "all the duties imposed by law on the city attorney, including conducting all the law business of the city, drafting ordinances, and supervising assistant city attorneys." *Id.* at 829. The state statutes in this case are similarly broad and don't limit the scope of the Deputy City Attorney's duties, plus Marnocha's job description was also quite expansive. Indeed, Marnocha said in her deposition that as Deputy City Attorney, department heads would come to her and ask, "This is what I want to do. How can I do it?" [DE 60-5 at 39.]

There is a litany of Seventh Circuit cases all consistently falling into line with *Newcomb*. I'm not going to go through all of those cases, but I will summarize a few for illustrative purposes. In *Livas v. Petka*, the Seventh Circuit held that a Will County Assistant State's Attorney occupied a policymaking or confidential position. *Livas v. Petka,* 711 F.2d 798, 800-01 (7th Cir. 1983). In *Americanos*, summary judgment was granted against a former Indiana Deputy Attorney General, after questioning "whether the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or on their implementation." *Americanos*, 74 F.3d at 141 (quotation omitted). And in *Opp*, an Assistant State's Attorney for the Cook County State's Attorney's Office was also found to have policymaking status. *Opp*, 630 F.3d at 619.

Marnocha argues that her case is different, because even though her written job description was broad, in practice, she was not actually a policymaker. For starters, I'm not so sure that's the case since the former mayor testified that he and Marnocha worked together on committees and sometimes he sought out her legal advice. But in any event, as the Seventh Circuit has recognized, "*Elrod* requires [us] to examine the 'powers inherent in a given office,' rather than the actual functions the occupant of that office performed." *Heck v. City of Freeport*, 985 F.2d 305, 309 (7th Cir. 1993) (quoting *Tomczak v. City of Chicago*, 765 F.2d 633, 641 (7th Cir. 1985)); *see also Meeks v. Grimes*, 779 F.2d 417, 420 n.2 (7th Cir. 1985) ("[O]ur focus is on the 'inherent powers' of the office, not what any individual officeholder actually does."). Marnocha's position gave her extensive duties, a high degree of discretion, and wide-ranging responsibilities.

Other unavailing arguments put forth by Marnocha are that she was not disloyal, Corporation Counsel thought she did a good job for the City and she should have been retained, a male supporter of annexation who she argues was even more visible on the issue was retained, and the City had to hire two male attorneys to ultimately fill Marnocha's shoes. But all of these arguments are completely beside the point. If she was a policymaker, the new mayor had the right to replace Marnocha with a new Deputy City Attorney of his choosing notwithstanding these facts.

Marnocha also tries to distinguish *Newcomb* and the Seventh Circuit cases by arguing that because she was not directly "appointed" by Mayor Moore, she cannot fit

13

the statutes' language of an "appointee on the policymaking level." I'm not sure I understand the distinction to be drawn between "appointing" someone to a job, on the one hand, and "hiring" someone for a job on the other. Pragmatically, they strike me as the same thing. In either event, I just don't think whether Marnocha was "hired" or "appointed" to her position is relevant in deciding whether she has a policymaking position under Title VII or the ADEA. As previously established, the powers of Marnocha's position are laid out by the applicable statutes and job descriptions, and "a new administration should not be overly hamstrung in filling key positions with loyal employees simply because of the way the prior administration operated." *Riley*, 425 F.3d at 361 (quotation omitted).

The parties concede that there is no Seventh Circuit case directly on point on the issue of whether a direct appointment is required. And, it is also true that those Seventh Circuit cases dealing with attorneys deemed policymakers all happen to deal with attorneys who were directly appointed. *See Levin v. Madigan*, No. 07 C 4765, 2011 WL 2708341, at *9 (N.D. Ill. July 12, 2011) ("the Seventh Circuit has not had occasion to define the exact parameters of what it means to be an 'appointee' for purposes of the Title VII and ADEA exemptions because in all of the cases before it, the law clearly stated that the plaintiff was appointed by a public official.").

Some appellate courts from other circuits and some district courts in this circuit have therefore suggested a two-part analysis that requires *both* that the employee was

14

an appointee of an elected official *and* that the employee was a policymaker. *See Anderson v. City of Albuquerque*, 690 F.2d 796, 800-01 (10th Cir. 1982); *Tranello v. Frey*, 962 F.2d 244, 249-50 (2d Cir. 1992); *O'Neill v. Indiana Comm'n of Pub. Records*, 149 F.Supp.2d 582, 589-90 (S.D. Ind. 2001); *Braaksma v. Wells Cmty. Hosp.*, 98 F.Supp.2d 1028-29 (N.D. Ind. 2000). I disagree that direct appointment by an elected official is required.

First, I fail to see the distinction between a person who is appointed by an officer holder on the one hand and a person who is appointed by someone who was in turn appointed by the office holder. Being one step removed should not make a difference. In this case, for example, Marnocha was placed in the position of Deputy City Attorney by Corporation Counsel Vranjes who was himself plainly an appointee of the Mayor. [DE 60-9 at 6-7, 22, 35-36.] To require the employee to be directly appointed by an elected official seems to add an artificial label that does not add anything to the already essential analysis of whether the employee has inherent powers of the office with the ability to put forth meaningful input into governmental decision making. Whether Marnocha was technically appointed by Mayor Moore, or just hired by the City of Elkhart or the Corporation Counsel, does not alter the fact that she was in a position of trust, and possessed a broad scope of duties that gave her the ability to provide meaningful input into government decisions upon which people could have differing opinions.

15

This case highlights how focusing on the "appointee" label is unhelpful.  Neese testified that before he fired Marnocha, he consulted a memorandum from the human resources department that listed all of the appointed positions within the City, Marnocha's name was on the list, and Neese thought that he had the right to terminate Marnocha at will.  [DE 60-8 at 74-77.]  The fact that previous-mayor Moore subsequently stated in his deposition that Marnocha was not actually appointed by him cannot possibly be the linchpin in the analysis of whether Marnocha held the position of a policymaker.

This sensible conclusion is bolstered by the fact that there is nothing in *Elrod*, *Branti*, or the Seventh Circuit cases limiting their holdings to direct appointees of elected officials.  In addition, the Seventh Circuit has held that the phrase "appointee on the policymaking level" in Title VII and the ADEA's definition of "employee" is interpreted identically to the First Amendment policymaker exemption, which does not require a formal appointment by an elected official:

> An individual is considered an appointee on the policymaking level if "the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation."  *Americanos v. Carter*, 74 F.3d 138, 141 (7th Cir. 1996) (quoting *Heideman v. Wirsing*, 7 F.3d 659, 663 (7th Cir. 1993)).  We derived this test from a pair of cases in which the Supreme Court permitted employee dismissals of individuals holding policymaking positions based on political affiliation.  *Id.* at 144; [*see Branti* and *Elrod*]; Drawing from these First Amendment political patronage cases, we articulated that in ADEA cases "the test for determining if someone is an 'employee' . . . is essentially indistinguishable from that applied in the political

> firing context under the *Elrod/Branti* doctrine." *Americanos*, 74 F.3d at 144 (citing *Heck v. City of Freeport*, 985 F.2d 305, 310 (7th Cir. 1993)).

*Opp*, 630 F.3d at 619-20.

But let's assume for the moment that a public official must have been directly appointed to be considered an "appointee on the policymaking level," there are still two other exclusions from the definition of "employee" under the statutes, including an "immediate adviser with respect to the exercise of the constitutional or legal powers of the office." 29 U.S.C. § 630(f); *Opp*, 630 F.3d at 619. In looking at the plain language of this prong, there definitely is no requirement for direct appointment to be an immediate adviser with respect to constitutional or legal powers. In this case, the inherent powers of the Elkhart Deputy City Attorney included providing legal counsel to "all municipal officials . . . relating to municipal governance." [DE 60-6 at 1.] This puts the Deputy City Attorney in a position to have "access to h[er] political superiors' confidential, politically sensitive thoughts." *Davis*, 668 F.3d at 477 (quotation omitted). Marnocha acknowledged that Elkhart officials sought her legal advice and opinions about how to accomplish certain actions. [DE 60-5 at 39.] As such, she also qualifies as an immediate adviser with respect to constitutional or legal powers. And, a public official like Mayor Neese is not required to "retain, in a confidential or policymaking job, persons who are not his political friends and may be his political enemies." *Wilbur v. Mahan*, 3 F.3d 214, 217-18 (7th Cir. 1993).

17

Because I find that Marnocha was in a policymaking position, she is exempt from First Amendment protection. And, because the Seventh Circuit has declined to draw a distinction between how employees are interpreted to be policymakers under the First Amendment and the ADEA and Title VII, and the EPA has similar language, that same test leads to the identical conclusion that Marnocha was a policymaker for purposes of these statutes too. Consequently, summary judgment is warranted in favor of Defendants.

Last, I note that even if I did not find that Marnocha was a policymaker, I still would have granted summary judgment on the claims for age and sex discrimination. Aside from several holes in Marnocha's prima facie cases under the ADEA and Title VII, her real problem is that Defendants have put forth a legitimate, non-discriminatory reason for firing Marnocha, and she has not come close to showing any pretext. As the incoming mayor, Neese did not want Marnocha, who he perceived as a vocal proponent of annexation, in his administration. Neese wanted to choose his own staff instead. This is a pure, nondiscriminatory reason for Marnocha's termination that has nothing to do with any protected basis. Marnocha has not pointed to anything at all in the record - no comments or anything else, to suggest she was fired on the basis of her sex or age. Therefore, even if I had found that Marnocha was not a policymaker entitled to that exemption, summary judgment would still be warranted on those claims.

## Conclusion

For the reasons set forth above, Defendants' motion for summary judgment [DE 94] is GRANTED. Plaintiff's claims against Defendants, City of Elkhart and Tim Neese, are HEREBY DISMISSED WITH PREJUDICE. Additionally, Defendants' Motion to Bar or Limit the Testimony of James A. O'Brien [DE 96] is DENIED AS MOOT. Finally, the Clerk is ORDERED to CLOSE this case.

SO ORDERED.

ENTERED: August 27, 2019.

>  /s/   Philip P. Simon
> PHILIP P. SIMON, JUDGE
> UNITED STATES DISTRICT COURT